## DUNSFORD v. BROWN.

The decision of the court in *Dunsford* v. *Brown*, 19 *S. C.*, 560, stated; and a second action by the same plaintiff against the same defendants for an accounting, as before, but now, for the first time, directly assailing in the complaint a receipt and discharge given by plaintiff to the principal defendant, *held* to be *res judicata*. Mr. Justice McGowan concurring in the result upon another ground.

Before Cothran, J., Richland, July, 1884.

The decision of this court in the former action of *Dunsford* v. *Brown* (19 *S. C.*, 560), and the statements in the Circuit decree, fully state this case.

By agreement of counsel the following questions were submitted to his honor for decision:

First. Is the plaintiff estopped from bringing the present action by the judgment in the former case?

Second. If not, does the judgment in the former action so conclusively establish the existence of a judgment of the Probate Court discharging the defendant, Brown, as to estop the plaintiff from *averring* against its existence in the present action?

Third. If so, are the allegations of the complaint in the present action sufficient to attack or set aside such a judgment or order of discharge of the Probate Court, on the ground of fraud and imposition?

The Circuit decree was as follows:

The determination of this case must depend upon the true meaning and effect of the decision of the Supreme Court of a former case between the same parties, having in view the same objective points, and which is to be found in 19 *S. C.*, 560.

    *        *        *        *        *        *        *

The Supreme Court held this (an amendment making the *allegata* conform to the *probata*) to be erroneous—that such amendment was allowable. If the deliverance of the Supreme Court had not gone beyond this, the point under consideration now would have been plainly presented, but I am embarrassed by the fact that the Supreme Court have, to some extent at least, considered the case upon its merits, and have found that the plaintiff had no cause to complain of the conduct of his guardian, the defendant Brown. Nor would I otherwise venture to make (which I do with great deference) some observations upon the pleadings in the former case.

When the plaintiff determined to begin his suit his counsel had free access to the records of the probate office. Knowledge of these was indispensable in the preparation of his case. He must have seen his client's receipt in full of file there. It was a lion in his path. He passed on, however, without regarding it. Surely, if not seen by him, its roar was heard when the answers came in. It was unheeded still. Whether an amendment of the complaint was necessary upon the coming in of the answers, depends entirely upon the true character and effect of the trans-

action of May 21 in the probate office. If that was a judgment of the Probate Court—a court having jurisdiction of the subject-matter—it should have been assailed directly, not collaterally, and that by way of amending the complaint before trial. If, upon the other hand, it was merely a matter of payment, no amendment of the complaint was necessary.

To the new matter set up in the answer the plaintiff had no right to reply. The reply is only allowed under the code in two possible cases—the one to a counter-claim, the other upon requirement of the defendant, upon his motion, and in the discretion of the court. Every "allegation of new matter in the answer not relating to a counter-claim is to be deemed contradicted by the adverse party, as upon a direct denial." *Code*, § 189. A familiar illustration may be given : Plaintiff sues upon a note (simple money demand) for $500. Defendant answers, averring payment of $200, for which he holds plaintiff's receipt; this amount is sufficiently controverted by the terms of the complaint to make the issue upon it. Defendant at the trial produces the receipt, and the plaintiff, without amending his complaint or by reply (unless the latter be demanded by the defendant and ordered by the court) would be allowed to prove, if he could, that the signature to the receipt was not genuine, a forgery, or that it had been obtained by duress. Such proof would go to cut down and destroy the defendant's defence, and is admissible under the rule of pleading cited. The objective point at which the plaintiff is aiming is the recovery of the $500—not the forgery, nor the duress. Of the former he might be entirely ignorant; of the latter, however, he would have knowledge, as well of the circumstances attending the act of duress as of the existence of the receipt for $200 with his genuine signature to it.

And so here the plaintiff must be held to have known of the existence of his receipt for $1,496.78 in full of all claims against his guardian. True, the objective point of this suit happens not to be, as in the case of the $500 note supposed, a liquidated demand, but that cannot so alter the case as to destroy the analogy. His demand is for an accounting, for making certain that which can be made as certain as if it were a liquidated sum. He is not driving *at* the fraud; he is demanding an accounting,

and proposes to drive *through* the fraud, if fraud there be, to reach by this action, as by the other already tried, the objective point, which is the accounting. If the proceedings in the probate office did not rise to the dignity of a judgment or decree of that court, it was not necessary to change the actual, substantial cause of action, in order to break down the defence of the defendant. An accounting was sought in the former action, and so also in this.

Mr. Pomeroy, after defining the term, "a cause of action," and distinguishing that from "the object of the action" (see sections 452, *et seq.*), with great force and clearness in section 455 warns the pleader "against the mistake of supposing that a distinct cause of action will arise from each special subordinate right included in the general primary right held by the plaintiff, or *from each particular act of wrong*, which, in connection with others, may make up the composite but single *delict* complained of." *Pom. Rem.* The facts which make up the plaintiff's primary right here are (1) the receipt by the guardian of the ward's estate, and (2) the liability of the guardian upon the ward's attaining his majority to pay the same to him. The defendant's *delict* is the neglect or refusal so to pay, alleging as a reason for not doing so, that he has in fact already done so. If this reason, on the contrary, was shown to have been "a particular act of wrong," to wit, of imposition by the guardian upon the ward, the right of the plaintiff to show this is subordinate to his general primary right to the accounting, and is not another cause of action.

It cannot be denied—it must in fact be conceded—that if the merits of this controversy have been heretofore passed upon, the litigation must cease. "*Interest rei publicæ finis sit litium.*" In view of the order of reference to the master, the testimony taken, his report, the exceptions thereto heard by the Circuit Judge, his decree, the grounds of appeal to the Supreme Court, the arguments of counsel thereon, the opinion of the Supreme Court, the petition for a rehearing, and the refusal thereof, with the reasons stated, can it be successfully maintained that the merits of this case have not been considered ? [Here follow

quotations from the Circuit decree of Judge Kershaw and from the opinion of this court.]

On January 24, 1884, the present action was begun; the parties to both suits are the same persons. The complaint, after setting forth the appointment of the guardian, the execution of the bond, &c., charges the defendant Brown with having received as the *corpus* of the plaintiff's estate the sum of $3,146 92, "besides interest which accrued thereon;" that said defendant filed annual returns in the probate office, "all of which, subsequent to the first, commenced with the balance of the preceding returns, and in such returns failed to credit the plaintiff with large sums of money received by him as interest on the funds of plaintiff's estate which had been invested, and with interest on such sums as were held by him uninvested, but charged the plaintiff with large sums which were not properly chargeable to him;" that plaintiff was raised upon a farm, with little education and no experience in business; had just attained his majority, and was greatly under the influence of his said guardian, and was thus induced to accept, in settlement of his claims against his guardian, a less sum than that to which he was actually and justly entitled, and prays that the pretended settlement and discharge be set aside, and that he have judgment for such amount as upon an accounting may be found due to him, &c.

The defendant Brown especially, the others being his sureties, denies that he received any other funds of the plaintiff except those with which he was charged in his annual returns; denies the charge of imposition and undue influence; and insists, as a defence to the action, upon the settlement of May 21, 1880, in the probate office, when he paid over the whole balance due to the plaintiff, and for which his receipt in writing was given and filed in the office of the probate judge; and, further, that all matters touching said guardianship have been heretofore made the subject of judicial investigation and determination, and that the plaintiff has no right to vex him and his sureties again in this behalf.

By comparison of the two complaints, it will be seen that, except as to the allegations in the latter assailing the *bona fides*

of the transaction of May 21, there is but little difference between them; the parties are the same persons and the object of each action is the same, to wit, an accounting. Besides, even in the latter complaint, under the rules of pleading which regulate the practice as well for setting aside a settlement for fraud as for surcharging and falsifying a stated account, and more especially *in the case of a settled account*, there is a conspicuous and fatal omission to state, with the requisite particularity, the facts and circumstances relied upon as characterizing the fraud. The authorities upon this point are innumerable and the current is unbroken. 1 *Dan. Ch. P. & P.*, 324, and note; 2 *Ibid.*, 1585; *Kerr Fr. & M.*, 365; *Porter* v. *Cain, McMull. Eq.*, 84; *Fraser* v. *Hext*, 2 *Strob. Eq.*, 250. Also *McDow* v. *Brown*, 2 *S. C.*, 95, where the cases are collated carefully and the whole subject is exhaustively reviewed. The facts of the case under consideration and the authorities cited, with the argument based even upon contrary suppositions, must be equally conclusive of the plaintiff's case. And this the logicians call a *dilemma*.

Take another horn of it. If the transaction of May 21, 1880, was not a decree or judgment of the Probate Court, no amendment was necessary, and the case has been disposed of. If it was a judgment or decree, it should have been assailed as such by complaint, original or amended. That the duties of life are more than life is nowhere better exemplified than in the crowded courts of justice. Every suitor is entitled to his day in court—but only to his day. When in such serious conflict the lists are set, the forces must not be brought up in detail, *singulatim*, but in full array; and, to drop the metaphor, a plaintiff is not allowed to present his case by piecemeal. Time, convenience, good faith, and fair dealing forbid, and these latter should be as conspicuous in pleading as elsewhere.

The Supreme Court has so frequently discussed the matter of *res adjudicata* (see the cases of *Hart* v. *Bates, Fraser & Dill* v. *Charleston*, and others, too recent to be unfamiliar) that it hardly seems necessary to prolong this decree by any observations of my own upon this subject, and I forbear to do so.

There are perhaps two other points in the case to which allusion should be made briefly and in conclusion. In refusing the

petition for a rehearing, the Supreme Court distinctly say, touching the discharge of Brown, the guardian, by the probate judge, that "the judgment of this court is not based upon that assumption," but "that the judgment of this" (that) "court was rested on the settlement between the parties pleaded in bar," &c.    The judgment is, "that the complaint be dismissed."    It has been settled by very high authority that "the decree dismissing the bill in the former suit in the Circuit Court of the United States, being absolute in its terms, was an adjudication of the controversy, and constitutes a bar to any further litigation of the same kind between the same parties.    A decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground, which does not go to the merits, is a final determination.    Where words of qualification such as 'without prejudice,' or other terms indicating a right or privilege to take further legal proceedings on the subject do not accompany the decree, it is presumed to be rendered on the merits.    Accordingly it is the general practice in this country and in England when a bill in equity is dismissed without a consideration of the merits, for the court to express in its decree that the dismissal is without prejudice ; the omission of the qualification in a proper case will be corrected by this court on appeal."    *Durant* v. *Essex Company*, 7 *Wall.*, 109.

It must therefore follow from this : (1) that if the complaint has been dismissed without words of qualification; (2) if it was not dismissed on account of a decree or judgement of the Probate Court which could not be collaterally attacked ; but (3) on account of a settlement between the parties, which was subordinate to the general primary right of action and assailable without amendment ; and (4) that the merits of that settlement have been passed upon—the bar to any further litigation of the same subject between these, the same, parties is effectual and complete.

The other point is, that the defendants may with propriety claim the protection of article IV., section 8, of the constitution : "When a judgment or decree is reversed or affirmed by the Supreme Court, every point made and distinctly stated in writing in the cause, and fairly arising upon the record of the case, shall

be considered and decided," &c. Applying this provision of the constitution to the exceptions contained in the Brief on appeal to the Supreme Court, and to the decision made by the Supreme Court, it is manifest that the matters sought by the plaintiff in this action to be drawn again into controversy, were "made and distinctly stated in writing," and have been determined, and the evidence of such determination "preserved with the records of the case."

Wherefore it is ordered, adjudged, and decreed, that the complaint be dismissed, and that the defendants have judgment against the plaintiff for their costs.

Plaintiff appealed upon the following exceptions:

I. Because his honor held that the accounting sought in this action could have been had in the former action between this plaintiff and the above named defendants without amendment, notwithstanding the plea of settlement, and that the decree in said cause was an adjudication of the claim set up in this action.

II. Because his honor held that plaintiff's right to set aside the alleged settlement for fraud and imposition was subordinate to his general right to an accounting.

III. Because his honor held that the same rules should govern the pleadings in this action as are applicable to an action to surcharge or falsify an account stated.

IV. Because his honor held that the complaint in this action does not "state with requisite particularity the facts and circumstances relied upon as characterizing the fraud," and that the facts alleged are insufficient to constitute a cause of action.

V. Because his honor held the judgment in the former action a bar to this action, and dismissed the complaint herein.

*Mr. W. H. Lyles,* for appellant.

*Messrs. Abney & Abney,* contra.

July 30, 1885. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The action below was brought by the plaintiff, appellant, against the defendant Brown (guar-

dian of appellant), and the other defendants, his sureties, to set aside an alleged pretended settlement, receipt, and discharge claimed by the defendant Brown, and also for an accounting by Brown for his actings and doings as said guardian. The main defence interposed was *res adjudicata*, growing out of a previous action in which, as averred in the answer, the matters herein were considered and adjudged, first in the Circuit Court, and on appeal by this court, where the complaint was finally dismissed.

The case was heard by his honor, Judge Cothran, who, sustaining the plea of *res adjudicata*, dismissed the complaint. His honor further held that, independent of the plea of *res adjudicata*, there was a conspicuous and fatal omission in the complaint in that the facts and circumstances of fraud relied on by the plaintiff to vacate the settlement and discharge were not stated with sufficient particularity, the judge holding that in such cases the rules of pleading and practice which obtain in surcharging and falsifying a stated account, and more especially a settled account, should apply, which he held were not observed here. The appeal questions the two rulings above.

First, as to the plea of *res adjudicata*. It appears that the plaintiff attained his majority on May 20, 1880. On the next day he appeared with his guardian, the defendant, in the probate judge's office for Richland County, and received the amount due him as ascertained by a previous statement of the guardian's accounts made in said office, the amount being $1,496.78, which was then paid over to him by the probate judge, with whom it had been deposited by the guardian, he, the plaintiff, giving a receipt in full payment of all claim against said guardian, which receipt was filed in the probate judge's office. In 1882 the plaintiff, without reference to this transaction in any way, commenced action against the present defendants, the guardian and his sureties, demanding an accounting, embracing in the demand not only what Brown had received since he became guardian, but also what a former guardian, one Weston, had received, and which the plaintiff claimed Brown ought to have collected from Weston. To this suit the defendants set up the defence of payment as a bar. An order of reference was made, directing the master "to take testimony upon all the matters of fact arising on the plead-

ings, to state the accounts between the parties, and to report the same, with all findings of fact."

Upon this reference the case was fully developed, and notwithstanding the plea in bar, all the facts in connection with the settlement in the probate judge's office, the discharge, &c., of May 21, referred to above, were brought out and reported. Judge Kershaw heard the case upon this report and the exceptions thereto. He sustained the master in holding that Brown was not liable for the amount received by Weston, but not paid over to him. He held, further, that although the transaction of May 21 had not been put in issue by the pleadings, and could not be attacked as a general rule by a collateral proceeding like that before him, yet the master having heard testimony upon this subject, he would regard that matter as embraced in the case, and to that end ordered an amendment so as to conform the pleadings to the proof, and he proceeded to pronounce judgment upon the whole case, setting aside the settlement and discharge of the probate judge and also the receipt of the plaintiff, and ordered Brown to account *de novo*, but, as we have said, exempting him from responsibility for the alleged errors in the accounting of his predecessor, Weston.

Upon appeal by defendant, this court held that it was error in the Circuit Judge to order and allow the amendment mentioned, or to determine the question of settlement and discharge, and upon full hearing this court dismissed the complaint. The plaintiff then filed a petition for rehearing, basing it upon several grounds, which were considered, and the petition was dismissed. 19 *S. C.*, 560–571.

The plaintiff thereupon commenced the action below, in which the settlement and discharge claimed by defendant Brown were directly assailed and sought to be set aside, which resulted as already stated in the decree of Judge Cothran, dismissing the complaint for the reasons given.

The appellant contends that this court, finding error in the action of the Circuit Judge in the former case, in that he considered and passed judgment upon the settlement and discharge of the guardian, when said settlement and discharge were not in issue therein, in that he went behind this settlement and dis-

charge before it had been assailed and vacated by a direct and proper proceeding, dismissed the complaint upon that ground, and upon that ground alone, thereby leaving the validity of said settlement and discharge an open question ; and that such being the fact, the plea of *res adjudicata* ought not to have availed the defendant below in an action brought by the plaintiff this time directly to assail said settlement and discharge. It is true that this court did, in the former appeal, hold that the action below having been brought simply for an accounting, altogether ignoring a settlement had between the parties, and making no allegation of fraud or imposition therein, the settlement and receipt given was a bar to said action, and that no accounting could be claimed until said settlement was set aside by a direct proceeding to that end. And if the court had held nothing more in that appeal but this, the position of appellant would be correct.

But the court went further. On page 567 of the opinion (19 *S. C.*) Mr. Justice McGowan, who delivered the opinion, used the following language: "But if the action had been brought directly for the purpose of setting aside the settlement and discharge, we do not see the evidence to sustain the judgment. There can be no doubt that a settlement was made with the ward after he came of age, who received the money, gave his receipt in full, and the guardian was discharged by the probate judge. We suppose that the settlement and discharge were not *prima facie* invalid, and what evidence is there to impeach the transaction ? The only circumstance tending in that direction is the fact that the settlement was made soon after the ward came of age, but that alone was not sufficient to overthrow it, if there was on the part of the guardian, Brown, no concealment, misrepresentation, imposition, or fraud." The opinion then goes on to discuss the law involving settlements of guardian's accounts with the ward shortly after he arrives at age, holding, finally, that there was nothing in this case to impeach the settlement.

All this was based upon the fact that notwithstanding the case might have been dismissed below on the settlement as a plea in bar, yet Judge Kershaw amended the complaint so as to bring in the question of the validity of the settlement and discharge, and passed judgment upon that question by setting aside said settle-

ment and ordering an account *de novo*. The court regarding it in that way as involved in the appeal, the judgment below was reversed and the complaint dismissed upon both the grounds. We think, therefore, that Judge Cothran was right in sustaining the plea of *res adjudicata* below.

With these views it is unnecessary to discuss the other question raised in the appeal.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCIVER concurred.

MR. JUSTICE MCGOWAN. I concur in the result; but the court having held in the former case that the proceeding was not directly to vacate the settlement, and if it had been, the defence and evidence might have been different, I would prefer to rest the judgment on the other ground, and not hold the matter as finally adjudicated.