## *EX PARTE* ROBERTS.

1. A., after the death of his wife and her surviving children, filed a bill in the Court of Equity, claiming all the property included in his marriage settlement, the next of kin then living of his deceased wife being parties defendant. The court decreed that, as to a moiety, it descended, at his death, to those persons who at that time would be the heirs-at-law of the deceased wife. After the death of A., the children of P., who was an aunt of the wife and a party to the former action, but who died before A., filed their petition in the original cause, claiming a share of this moiety, their mother at the time of the wife's death being one of her next of kin. *Held*, that the matter was *res judicata.*

2. The decision in *Gaillard* v. *Porcher*, *McMull. Eq.* 358, stated and defined.

3. The principles of *res judicata* considered and declared.

4. Under a marriage bond, the husband bound himself to convey certain property to trustees when his wife attained her majority, to be held in trust for himself during life, and in case his wife died first without issue living at her death, or such issue should die in his life-time, then in trust (1) *as to one moiety* for whomsoever he should by will appoint, or, in default of appointment, to his heirs; and (2) as to the other moiety, for the heirs-at-law of the said wife. The wife died leaving children, all of whom died in the husband's life-time. *Held*, that the remainder to her heirs was contingent and not vested.

Before HUDSON, J., Charleston, December, 1881.

The opinion states the case. The Circuit decree was as follows:

The petition in this case has been filed to obtain the construction of the marriage article between Samuel Porcher Gaillard and Mary M. Peyre, his wife; all technical objection to the regularity of the proceeding being waived with a view to obtaining the judgment of this court.

In the principal cause in which the petition is filed, the bill was filed to have from the court a construction of the same articles. To it were made parties all who were or might be interested in that construction, including the mother of the petitioners, Betsey S. Porcher, who, by her intermarriage, subsequently became Betsey S. Roberts. The construction so given included the question now raised by this petition, and required the judgment of the court to be rendered as to the question, At what time were the persons to be ascertained, who would answer the description of " her heirs-at-law ? " Whether at her death, or at his death ? And the judgment of the Circuit Court was affirmed by the Appeal Court, that " then," as used in the marriage articles, referred to his death and not to hers.

That judgment was against S. P. Gaillard, who thus raised precisely the same issue as is now raised by these petitioners, and was in favor of Betsey S. Porcher, who, in that controversy, was found on the side opposite to that held by these petitioners. The court held contrary to Gaillard's construction, that Betsey S. Porcher might *in futuro* be heir-at-law to Mary M. Peyre, *i. e.,* if she survived S. P. Gaillard, but otherwise not.

At his death the heirs-at-law of Mary M. Peyre were Anna M. Stoney and Isabella S. Porcher. Betsey S. Porcher (by her marriage Betsey S. Roberts), the mother of the petitioners, had died before Samuel P. Gaillard; and at his death, therefore, did not answer the description of an heir-at-law of his wife, Mary M. Peyre. She was, therefore, not entitled to share in the distribution of the property of Mary M. Peyre, and the petitioners who claim through her, as her representatives, are, therefore, excluded according to the judgment of the highest appellate tri-

bunal in the State, at the time when the case was before it. A reference to the case as reported will show that the point now before this court was distinctly raised in the pleadings, and as distinctly decided by the court. *Gaillard* v. *Porcher, McMull. Eq.* 359.

When, therefore, the plea of *res judicata* is interposed, and under it objection made to the consideration of the petition and the relief asked, it must prevail. After the lapse of nearly forty years, to re-open a case and renew a controversy solemnly decided by the highest judicial authority in the State, on behalf of the representatives of one who was before the court, a party to that controversy, cannot be allowed. The judgment of the court is, that the matter of the petition and the relief asked is *res adjudicata*, and that the petition must be dismissed and the relief it asks be refused.

For the purposes of this case, it would not be necessary to say more. But the counsel for the petitioners have pressed on the argument and urged the opinion of the court upon the question before the Court of Appeals, as if it were *res nova.* It is only necessary for me to say, that while the judgment of that court would control me under any circumstances, yet if the petition were before me as *res nova,* I would consider that the construction given by the Court of Appeals is the proper construction, and fully sustained by the adjudged cases.

The counsel for petitioners are in error in supposing that this construction is at variance with the rule laid down in *Rutledge* v. *Rutledge, Dudley Eq.* 201 ; in *Hicks* v. *Pegues,* and *Buist* v. *Dawes,* 4 *Rich. Eq.* 413 and 421, and in *Glover* v. *Adams,* 11 *Rich. Eq.* 264. There is no conflict discoverable upon an examination of the written instruments construed in each case. *Rutledge* v. *Rutledge* was at that time familiarly known to the court and bar, and was doubtless advanced as a leading authority by counsel of S. P. Gaillard, but without effect on the court.

Let the petitions be dismissed, with costs.

*Messrs. McCrady & Sons,* for appellants.

*Messrs. DeSaussure & Sons,* contra.

March 31st, 1883. The opinion of the court was delivered by MR. JUSTICE McGOWAN. In the year 1835, S. Porcher Gaillard and Mary M. Peyre, in contemplation of marriage, entered into an agreement that the property of the said Mary should be settled to certain uses. The marriage settlement was not,·in fact, executed; but, by way of articles for a settlement, the said S. P. Gaillard executed what is styled "a marriage bond" to William Mazyck Porcher, Peter C. Porcher and Thomas Walter Peyre, in the penalty of $40,000, conditioned that as soon as the said Mary attained the age of twenty-one years, he would convey the property mentioned to the aforesaid payees of the bond in trust, as follows, to the said S. Porcher Gaillard, for life, for the maintenance of Mary M. Peyre and her children. "But in case the said M. M. Peyre should die· before the said S. P. Gaillard, leaving no issue living at her death, or in case she should leave any child or children, grand-child or grandchildren, living at her death, and they should all die in the life-time of the said S. P. Gaillard, unmarried and without issue, then in trust, (1) as it regards one-half of the said property, real and personal, to and for the use and behoof of such person or persons, their, his or her heirs, executors and assigns, as the said S. P. Gaillard shall, by his last will and testament, to be executed in the presence of three or more credi-ble witnesses, appoint to take the same; and in default of such appointment then to and for the use and behoof of the heirs-at-law of the said S. P. Gaillard, their heirs, executors, adminis-trators and assigns forever; and, (2) as it regards the other moiety or half of the said property, to and for the use and behoof of the heirs-at-law of the said M. M. Peyre, their heirs, executors, administrators and assigns forever."

Mary M. Peyre, the wife, died about October, 1839, in the life-time of her husband, S. P. Gaillard, leaving three children, all of whom died shortly after, unmarried and without issue, but leaving collateral heirs (an uncle, Thomas Porcher, and an aunt, Elizabeth C. Ravenel,) of the whole blood, and numerous uncles and aunts of the half blood, among whom was a maternal aunt, Betsey S. Porcher, who afterwards intermarried with John J. Roberts, and died in the life-time of S. P. Gaillard, leaving

surviving her husband and two children, Jane D. Roberts and Martha D. Roberts, who, as will be stated hereafter, are the petitioners.

After the death of the said Mary M. Peyre and her children, to wit, on or about the year 1842, the said Samuel P. Gaillard filed his bill of complaint (being the same revived in which this petition was filed) in the Court of Equity for Charleston district, against the trustees named in the marriage bond, and against all of the aunts and uncles of the said Mary M. Peyre, including the said Betsey S. Porcher, who were all regularly made parties; in which bill he asked construction of the marriage bond, and claimed the whole property as only heir-at-law of his deceased wife and children. Upon the bill and answer, the cause was heard by Chancellor Harper, who dismissed the bill, saying : " If the terms of these articles had been upon the husband's surviving and dying without issue, then, as to one moiety, the persons who shall, at that time, answer the description of the wife's heirs-at-law, there would have been nothing ambiguous, and nothing to prevent the dispositions having effect. I imagine that no one ever read the words in question, who doubted that such were their meaning, and no other. The words are : ' If he survives her, and dies, leaving no issue of the marriage living at his death, then, as to one-half of the property, for the use of such persons as he shall appoint by his will ; and if he make no appointment, then to his heirs-at-law ; as to the other half, to her heirs-at-law.' The word ' then ' plainly relates to the whole of the clause, and in the ordinary and popular acceptation of the terms, they would be taken to mean the persons who shall at that time be her heirs-at-law. * * * The legal title of the property never having been transferred to the trustees, the complainant needs no relief. He may enjoy it according to the terms of his contract. Upon the application of the trustees, or of the parties who may be entitled at his death, the proper relief will be granted. It is ordered and decreed that the bill be dismissed."

From this decree the complainant appealed, on the ground " That the intention of the parties, as indicated by the terms of the bond to execute a marriage settlement, was that the heirs should be fixed

at her death, or, at all events, at the death of her last surviving child, unmarried and without issue." Upon the appeal being heard, the old appeal court in equity decided as follows: "We concur in the decree of the Circuit Court. Appeal dismissed." *Gaillard* v. *Porcher, McMull. Eq.* 358.

Samuel Porcher Gaillard died in August, 1880, leaving a will which disposed of his half of the property. In the meantime all the aforesaid uncles and aunts of Mary M. Peyre, including Betsey S. Porcher, who were parties to the bill of Gaillard, had died, except two, viz.: Anna M. Stoney and Isabella S. Porcher, who, at the time of the death of S. P. Gaillard, were the only persons living who answered the description of her heirs, as the children of those who had died—first cousins—were too far removed to take, while the two aunts, before named, were living.

In June, 1881, Jane DuB. Roberts and Martha D. Roberts, children, as before stated, of Betsey S. Porcher, who had died before S. P. Gaillard, filed this petition *in re*, claiming the share to which their mother, if living, would have been entitled, and asking the court "to require William Mazyck Porcher, the only surviving trustee, to apportion and pay over to them as the share of the estate to which they may be entitled." The surviving trustee answered, denying the claim, upon the ground that, by the articles of marriage settlement, the property was given for life to S. P. Gaillard, and then, as to one moiety, over to those persons who, at the time of the death of said Gaillard, answered the description of heirs of Mary M. Peyre; that the articles had been so construed by a competent tribunal, and the question was *res adjudicata* so long as 1842 in the proceedings above referred to; that the only persons who answered the description of heirs of the said Mary M., at the death of Gaillard, her husband— Anna M. Stoney and Isabella S. Porcher—are entitled to the whole of the other half of the property, and that the petitioners, not now being heirs, have no interest, and their petition should be dismissed.

The petition and answer were heard by Judge Hudson, who dismissed the petition, holding that the matter was adjudged by the former proceedings in 1842; but, if the question were still

*res integra,* he concurred with Chancellor Harper, that the proper time for ascertaining who were the persons to take, under the description of "heirs of Mary M. Peyre," was at the falling in of the life estate—the death of S. P. Gaillard. From this decree the petitioners appeal to this court upon the following grounds:

First. "Because his Honor erred in holding that the question presented to the court is *res judicata,* for the reasons that his Honor erred in holding: (1). That in the principal cause the question presented was, 'At what time were the persons to be ascertained who would answer the description of 'her heirs-at-law,' whether at her death or his death ? ' The real question presented being whether the husband should not take the whole property, to the exclusion of the wife's relations—not which of the wife's relations should take. (2). That the decree in the principal cause decided ' That Betsey S. Porcher might, in future, be heir-at-law to Mary M. Peyre, *i. e.,* if she survived S. P. Gaillard, but not otherwise.' (3). That the question now before the court is precisely the same as that before the court in the principal cause.

"Second. Because his Honor erred in holding that ' at his death (S. P. Gaillard) the heirs-at-law of Mary M. Peyre were Anna M. Stoney and Isabella S. Porcher,' and that the legal representatives of Betsey S. Porcher were not heirs-at-law at that time, and not entitled to share in the distribution."

The exceptions charge error in the Circuit decree in sustaining the defense of *res adjudicata,* upon the ground that neither the subject-matter nor the parties in this suit are the same as those in the former proceeding. To determine this it will be necessary to have a clear view of the scope and limit of the doctrine. This court has lately had occasion in several cases to consider that subject, and in the case of *Hart* v. *Bates,* 17 *S. C.* 40, announced the principle in the following terms: " The doctrine of *res adjudicata* is very far-reaching and effective. It is founded on principles of the wisest policy, because the peace and order of society require that a matter once litigated should not again be drawn in question between the same parties or those claiming through them. * * * As we understand it, the rule established in the *Duchess of Kingston's Case* is: First. That the

judgment of a court of competent jurisdiction, directly on the point, is as a plea, a bar, or as evidence, conclusive between the same parties upon the same matter, directly in question, in another court. Second. That the judgment of a court of exclusive jurisdiction, directly upon the point, is in like manner conclusive upon the same matter, between the same parties, coming incidentally in question, in another court, for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which comes collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment. 2 *Sm. Lead. Cas.* 494 and *notes.* It seems, therefore, that to make out the defense at least three things are necessary : the parties must · be the same, or their privies ; the subject-matter must be the same ; and the precise point must have been ruled."

Taking this as our guide, Was it error in the Circuit judge to hold that the petitioners were estopped by the principle of *res adjudicata ?* As to the question whether the parties are the same : This petition is filed *in re* in the identical proceeding in which the former judgment was pronounced. It is true that S. P. Gaillard, the complainant in that case, and many of the other parties are now dead, but all of the original parties who are still living must be considered as now before the court. It is also true that the petitioners were not parties to the former proceeding. At that time they were not born, but their mother, Betsey S. Porcher, through and under whom they claim, was a party to the proceeding, and, being her privies, both in blood and estate, they stand in her place and are bound by whatever would bind her. *Tate* v. *Hunter,* 3 *Strobh. Eq.* 136 ; *Watson* v. *Columbia Bridge Co.,* 13 *S. C.* 436 ; *Hart* v. *Bates, supra.*

Then, as to the subject-matter. We suppose there can be no doubt that the principal question made in the former case was as to the proper construction of the marriage articles, and that such is the question now made. But it is earnestly urged that the former case did not decide negatively the precise point made here, viz. : that the interest of the persons described as heirs of Mary M. Peyre vested in them as heirs upon her death, and,

being so vested, was transmissible to their representatives, so that the children of one of them, who died in the life-time of S. P. Gaillard, may now after her death recover the share of that predeceased parent. Whether this precise point was decided by the former judgment may be determined in one of two ways— either by the record or extrinsic proof, showing whether as a matter of fact the point was expressly made; or, if not, by showing from the nature of the issue that the point must of necessity have been determined by the judgment. As expressed by Mr. Justice Miller, in his dissenting opinion in the case of *Aurora City* v. *West*, 7 *Wall.* 106, "The rule is, that where a former judgment is relied on it must appear from the record that the point in controversy was necessarily decided in the former suit, or be made to appear by extrinsic proof that it was in fact decided. This is expressly ruled no less than three times within the last eight years by this court, viz. : in the *Steam Packet Co.* v. *Sickles*, 24 *How.* 333; *Same* v. *Same*, 5 *Wall.* 580; *Miles* v. *Caldwell*, 2 *Wall.* 35."

Extrinsic evidence was not offered in this case, and the question is, whether the record shows that the precise point above indicated was expressly made in the former proceeding, or was substantially involved and necessarily decided by the judgment therein. The bill was filed by S. P. Gaillard after the death of his wife and children, claiming the whole property absolutely, first as heir of his wife along with his children, and then as sole heir to them. It stated that "If the heirs-at-law of your orator's late wife, within the meaning of the said bond, are to be fixed at the time of her death, then your orator claims as her sole surviving heir-at-law and the sole surviving heir of her children also to be entitled to the whole of the trust property absolutely. But if the heirs-at-law of your orator's late wife are to be fixed at the time of the death of her last surviving child, then your orator submits that he is entitled absolutely to one moiety under the express terms of the bond, and to two-thirds of the other half as favored heir-at-law, she having, besides your orator, left no nearer kindred than uncles of the whole and half blood," &c.

To this claim the answer was, that "By the events which

have occurred the estate is to remain in trust for the use of the said complainant (S. P. Gaillard) for his life, and after his death then, as to one moiety thereof, for such person as he shall appoint by his last will, and in default of such appointment for his heirs-at-law; and as to the other moiety, for such persons as shall at the time of the said complainant's death answer the description of heirs-at-law of his deceased wife," &c. Upon the issue thus made, Chancellor Harper rendered the decree before stated, holding that the word " ' then ' plainly relates to the whole of the clause, and, in the ordinary and popular acceptation of the terms, they would be taken to mean the persons who shall at that time be heirs-at-law," and dismissed the bill.

Looking to the issue made in the pleadings and the terms of the decree itself, it seems to us that the judgment necessarily decided the exact point—that the death of S. P. Gaillard, and not any period anterior to that event, was the time at which the persons described as heirs of Mary M. Peyre were to be ascertained. In dismissing the bill of S. P. Gaillard, the court certainly did decide that he, the person indicated by the law as the principal heir of his wife, did not acquire any fee-simple vested interest in any part of the property as such heir. And so deciding as to him, did not the decision include and determine the same rights of all others who were then in the category of heirs? He claimed the whole as heir and would have recovered it, in addition to his own moiety, if the principle asserted in the case of *Glover* v. *Adams,* 11 *Rich. Eq.* 267, had been applied by the court.

In that case, relied on by the petitioners, it was held by a divided court that " the husband, in addition to the provision made for him as survivor of his wife, took an interest along with her distributors upon her death, an interest cumulative to that held under the deed." It is plain that the court did not think that principle applied to this case, otherwise they would have sustained the bill and granted the relief prayed for. They decided the contrary, and in effect held that the interest over did not vest until the death of S. P. Gaillard.

It is urged, however, that while this may be true as to Gaillard, it does not follow as to the other heirs, for he was excluded

as an heir because he was already provided for in having the use of a life-estate in the whole. As was said in the case of *Glover* v. *Adams, supra,* "It will hardly do to blot out one express provision because there is another express provision." We know of no authority for such a distinction between him and the other heirs. The marriage articles certainly made none such; but, on the contrary, gave the aforesaid moiety in general and unqualified terms "to and for the use and behoof of the heirs-at-law of the said Mary M. Peyre." The very fact that no distinction was made excluding the person—already in the use of the whole for life—from also taking, as heir, the greater part, if not the whole of the property absolutely, may have had its influence in bringing the mind of the court to the conclusion which they expressed, that it was the intention of the parties that no inquiry for heirs should be made until the death of S. P. Gaillard, and that the aforesaid moiety was for such persons as should at that time answer the description of "heirs-at-law of his deceased wife."

The interest over was never, in any sense, a vested remainder; but, on the contrary, very contingent. The persons who were described as the "heirs-at-law of Mary M. Peyre" were not to take by descent as her heirs, but as purchasers *per formam doni;* the description of the persons to take as "the heirs of Mary M. Peyre" being intended, probably, to indicate as recipients her blood relations as contra-distinguished from her husband, who had the use of the whole for life, and his relations who were otherwise provided for.

The judgment of this court is that the judgment of the Circuit Court be affirmed.